UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CURTIS A. MCDANIEL,
                            Plaintiff,

               -v-

CITY OF NEW YORK, *et al.*,
                            Defendants.

19-CV-3526 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    This case concerns allegations of constitutional violations against Curtis A. McDaniel committed by New York City law enforcement officials during his arrest and confinement in 2018. Mr. McDaniel, litigating *pro se*, brought this action under 42 U.S.C. § 1983 seeking money damages against those people and entities that allegedly violated his rights. Before the Court is a motion for summary judgment filed by the defendant, New York City police officers and the City of New York. For the reasons that follow, the motion is granted.

**I.    Background**[1]

    Plaintiff Curtis A. McDaniel was arrested on June 21, 2018, in a manner and for reasons he claims violated his constitutional rights. McDaniel's interaction with the police was initiated by a 911 call placed by his roommate, Powell, who reported to the 911 operators that he was

---

[1] The facts set forth here are taken from Defendants' Amended Rule 56.1 Statement (ECF No. 95) and the record evidence cited therein. Plaintiff failed to respond to Defendants' Rule 56.1 statement. "If the opposing party fails to respond to the moving party's Rule 56.1 Statement, then the material facts contained in the moving party's statement are deemed admitted as a matter of law." *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 177–78 (S.D.N.Y. 2009) (citation omitted). While *pro se* litigants are not excused from meeting the requirements of Local Rule 56.1, "the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Id.* at 178 (citation omitted). The Court therefore references additional factual assertions made by Plaintiff during his deposition.

being attacked and requested that they "send someone." (ECF No. 90-3.) There is a recording capturing an attack between two individuals on the 911 recording logs. (*Id.*) McDaniel was not present when officers arrived. (*See* ECF No. 90-4 ("Pl. Deposition").) Powell reported having been struck by McDaniel in the face and body, showed the officers bodily injuries, and said that McDaniel had threatened to kill him. (ECF No. 90-5.) The police did not arrest McDaniel that night, and, instead, Defendant Detective J. Quilty sought an order of probable cause to arrest McDaniel on June 21, 2018. (ECF No. 90-6.)

Much later and after Detective Quilty's request was approved, McDaniel was arrested while appearing in court at 100 Centre Street on an unrelated matter by Defendant Officers Kenneth Faulkner and Daniel Howell. (ECF No. 95 ¶ 19-20; ECF No. 90-10.) McDaniel was transported by these officers to a holding cell, and the parties agree that he was asked to submit to a search and, at least partially, complied. (ECF No. 95 ¶ 33; Pl. Deposition.) During the course of McDaniel's booking and restraint in the Centre Street holding facilities, McDaniel alleges that various police officers illicitly strip searched him, injured him, and otherwise violated his constitutional rights. According to Defendants, however, booking procedures went normally except for certain violent outbursts from Plaintiff. (*See* ECF No. 95 ¶ 24-28; ECF No. 93 ("D. Memo.") at 3.) Then, during the early period of McDaniel's custody, there was an altercation that resulted in Officer Bobby Wilkins using a taser on McDaniel in the presence of Officers Patrick Fanny and Gregory Welch. (ECF No. 95 ¶ 36.) McDaniel testified that he was ignoring requests from the officers in the lead-up to the incident. (Pl. Deposition.)

Plaintiff filed suit on April 19, 2019, and filed the operative complaint on September 21, 2020. (ECF Nos. 1, 49.) He seeks money damages under 42 U.S.C. § 1983 for (1) violations of his Fourth Amendment rights (false arrest and unreasonable search); (2) malicious prosecution;

(3) excessive use of force; (4) violations of his Eighth Amendment rights; (5) violation of his Sixth Amendment rights; and (6) violation of the Fourteenth Amendment Equal Protection Clause. On October 7, 2020, the Court dismissed several defendants from the case, *sua sponte*, for reasons of judicial or prosecutorial immunity. (ECF No. 50.) The remaining Defendants jointly moved for summary judgment on March 2, 2022. (*See* ECF No. 92.)

## II.     Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail at summary judgment, the non-moving party must raise a genuine issue of material fact. Fed. R. Civ. P. 56(c). Raising such an issue requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Rather, the movant need not affirmatively produce evidence; they can prevail if, after discovery, "there is no genuine issue as to any material fact" such that a reasonable juror could find for the nonmovant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

District courts "remain obligated to construe *pro se* complaints liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). *Pro se* papers should be read with a "special solicitude" and should be interpreted to raise the "strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (citations omitted).

## III.     Analysis

### A.     Failure to Oppose

Defendants argue that McDaniel was late in responding to their motion for summary judgment, having submitted his opposition on May 31, 2022, past the original deadline of March 15, 2022. (*See* ECF No. 102.) For this reason, Defendants urge that McDaniel should be

considered to have conceded the summary judgment motion, having failed to contest their summary judgment motion in the window available. (*Id.*) While McDaniel was indeed late in submitting his opposition, due to the Court's obligation to liberally construe the papers of *pro se* litigants seeking access to the federal courts, the Court declines to dispose of this case on the basis of procedural default. Instead, it considers the merits of McDaniel's arguments below. Accordingly, the procedural basis for entry of summary judgment laid out in Defendants' reply (ECF No. 102) is denied.

### B. Qualified Immunity: Fourth Amendment, Malicious Prosecution, and Excessive Force Claims

Defendants argue that their conduct is immunized by the doctrine of qualified immunity. (D. Memo. at 21 – 24.) If the doctrine applies, then "[q]ualified immunity protects officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Taravella v. Town of Walcott*, 599 F.3d 129, 133 (2d Cir. 2010) (citation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of the right [were] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up).

In assessing whether qualified immunity applies, the key fact is that the Defendants proceeded according to a lawfully issued warrant; McDaniel does not contest this. Where, as here, a defendant can show there was probable cause at the time of the arrest, shown here based on Powell's 911 call, the arresting officers must be granted qualified immunity on false arrest and malicious prosecution claims stemming from that arrest. *See Little v. City of New York*, 487 F. Supp. 2d 426, 438-40 (2d Cir. 2007). Because the relevant Defendants are protected by qualified immunity with respect to Mr. McDaniel's arrest, the false arrest and malicious

4

prosecution claims must be dismissed. And when qualified immunity applies on the basis of probable cause to arrest, it is a defense to any false arrest claim as well. *See Wevant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)).

There is no dispute that the arrest occurred on the basis of probable cause, and this fact similarly disposes of McDaniel's unreasonable search claims. An arrest pursuant to probable cause permits a search incident to arrest. *See United States v. Robinson*, 414 U.S. 218, 235 (1973) (holding that in the case of a lawful arrest, the full search of the arrestee's person is both an exception to the warrant requirement of the Fourth Amendment and also a per se "reasonable" search under that Amendment). McDaniel, at his deposition, stated that he was neither fully strip searched nor at any point touched during this search incident to arrest. (Pl. Deposition.) Additionally, courts have held that requests to remove clothing that may contain weapons or contraband are per se reasonable pursuant to a *Robinson* search or the search of a new inmate in a carceral setting as a matter of law. *See Murphy v. Hughson*, 2021 WL 5199938, at *5 (W.D.N.Y. Nov. 9, 2021) (qualified immunity warranted summary judgment "[e]ven assuming Defendant . . . conducted the [challenged] strip search" because "there is no question that an officer of reasonable competence would have thought that conducting a strip search of a new inmate . . . was constitutional" (quoting *Vasquez v. Maloney,* 990 F.3d 232, 241 (2d Cir. 2021)). Accordingly, it was not "clearly established" at the time of the search that asking Mr. McDaniel, then in police custody, to remove his belt and shoes violated his constitutional rights, and the Court grants summary judgment on the search claims as well.

Qualified immunity applies to McDaniel's excessive force claim against Officers Welch, Fanning, and Wilkins related to the stunning of McDaniel with a taser. McDaniel's own account of the events, explained in both his deposition and Second Amended Complaint, is that, in the

moments before he was shocked, he was ignoring the three officers' repeated commands and raised his arms in response to the officers entering his cell. (*See* ECF No. 49.) Courts grant qualified immunity on excessive force claims where, as here, it is undisputed that the officers could have reasonably interpreted an individual to be resisting lawful orders. *See Brown v. City of New York*, 862 F.3d 182, 192 (2d Cir. 2017). The Court thus grants summary judgment in favor of Defendants because not "every reasonable police officer would view [use of] the taser . . . as excessive according to clearly established law." *Scoma v. City of New York*, 2021 WL 230295, at *13 (E.D.N.Y. Jan. 22, 2021) (citing *Muschette on behalf of A.M. v. Gionfrido*, 910 F.3d 65, 69 – 70 (2d Cir. 2018)).

### C. Eighth Amendment Claims

Plaintiff asserts two violations of his Eighth Amendment rights, relating to excessive bail and excessive force. The first claim fails because McDaniel's bail was set, and McDaniel was released pretrial. Moreover, as a matter of law, all claims related to bail must be dismissed as McDaniel has not properly joined a defendant with any responsibility over his bail proceeding. "A plaintiff cannot sustain a § 1983 claim for excessive bail against a defendant who played no role in setting the bail amount." *Jackson v. Marshall*, 2008 WL 800745, at *4 (S.D.N.Y. March 25, 2008) (citing *Estes-El v. New York*, 552 F. Supp. 885, 889 (S.D.N.Y. 1982); *Hansel v. Sheridan*, 991 F. Supp. 2d 69, 77 (N.D.N.Y. 1998)). The remainder of the Eighth Amendment claim relates to the alleged strip search and the alleged excessive force discussed above. Plaintiff's claim fails here because he was not convicted on the charges underlying the arrest. *See Ingraham v. Wright*, 430 U.S. 651, 671 at (1977) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.").

### D. Sixth Amendment Speedy Trial Claim

McDaniel argues that there was an unreasonable delay in providing him access to trial in contravention of the Sixth Amendment and relevant statutes. The test when "evaluating a § 1983 Sixth Amendment speedy trial claim" requires that "courts analyze four factors: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Jackson*, 2008 WL 800745, at *3 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Johnson v. Constantellis*, 2005 WL 2291195, at *17 (S.D.N.Y. Aug. 10, 2005)). The first factor — length of delay — is held to be a threshold requirement that must be satisfied before considering the other factors. *United States v. Cabral*, 979 F.3d 150, 157 (2d Cir. 2020).

Here, it is undisputed that McDaniel was not indicted and criminal process commenced on the very same day of his arrest, June 21, 2018. (Def. Memo. at 19; ECF No. 90-8.) McDaniel's case was processed and dismissed within four months, a period which does not support a finding of unreasonable delay. *See Barker*, 407 U.S. at 530. Thus, the Court grants summary judgment in favor of Defendants on the speedy trial claim.

### E. Fourteenth Amendment Equal Protection Claim

Daniel also argues that the combined behavior of the various defendants, and specifically his alleged wrongful targeting for arrest and prosecution, violated his Fourteenth Amendment Equal Protection rights. (ECF No. 49 at 15 – 19.)

For the same factual reasons that the other claims were subject to summary judgment based on qualified immunity, McDaniel's Equal Protection claim must be dismissed as well. McDaniel concedes that a lawful warrant based on sufficient probable cause was the source of his arrest. His argument is that, despite any legitimate reason for his arrest and confinement, the actual motivations of police and prosecutors targeted him unequally. But the "cases foreclose any argument that the constitutional reasonableness of [detention] depends on the actual

motivations of the individual officers involved." *Whren v. United States*, 517 U.S. 806, 813 (1996). Because the Defendants' conduct here did not "deviate[] materially from usual police practices," any unequally applied animus a state actor may have directed at Mr. McDaniel is not a basis for a constitutional claim. *Id*. at 814.

### F.    Municipal Liability

The Complaint, Amended Complaint, and Second Amended Complaint all name New York City as a Defendant in this action, but McDaniel has not made any allegations implicating the City under a theory of municipal liability, whether in his filings or in his deposition.[2] "To maintain a § 1983 action" against a municipal entity, "a plaintiff must establish two elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Sidbury v. City of New York*, 2020 WL 2615926, at *3 (E.D.N.Y. May 21, 2020) (quoting *Sinacore v. Dep't of Corr. Servs., State of N.Y.*, 104 F.3d 354, 354 (2d Cir. 1996)). Here, McDaniel's papers, even construed as liberally as is required given his status as a *pro se* litigant, cannot fairly be read to contain any allegations regarding either of these prongs. Thus, the Court grants summary judgment on all claims against the City of New York.

### G.    Ineffective Assistance of Counsel Claim

Finally, Plaintiff appears to allege that his privately hired attorney, Howard Leader, conspired with Assistant District Attorney Chris Rivet to effectuate the June 21, 2018 arrest, which can be liberally construed as an ineffective assistance of counsel claim. To the extent that

---

[2] Plaintiff's Complaint, First Amended Complaint, and Second Amended Complaint asserted claims against the People of the State of New York or the People of the City of New York. The Court construes those claims to refer to the City of New York. (ECF No. 50.)

Plaintiff brings such a claim, it is dismissed without prejudice because Leader has not been served with process in this matter. See Fed. R. Civ. P. 4.

## IV. Conclusion

For the foregoing reasons, Defendants' joint motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motion at ECF Number 92 and close this case.

The Clerk of the Court is further directed to mail a copy of this opinion to the *pro se* party.

SO ORDERED.

Dated: March 30, 2023
      New York, New York

                                    J. PAUL OETKEN
                                    United States District Judge